George W. Potter v. Commissioner. George N. Spiva v. Commissioner. Spiva Investments, Inc. v. Commissioner.
Potter v. Commissioner
Docket Nos. 109126, 109247, 109248.
United States Tax Court
1943 Tax Ct. Memo LEXIS 390; 1 T.C.M. (CCH) 787; T.C.M. (RIA) 43139; March 23, 1943
*390 W. E. Baird, C.P.A., 701 Fidelity Bldg., Kansas City, Mo., for the petitioners. Gene W. Reardon, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: These proceedings, consolidated for hearing, are for a redetermination of deficiencies in income tax and personal holding company surtax for 1937 as follows: Personal
Holding
Docket
Income
Company
No.
Petitioner
Tax
Surtax
109126
George W. Potter
$1,915.99
109247
George N. Spiva
482.07
109248
Spiva Invest-
ments, Inc.
864.62
$5,143.77
The question in issue is the amount of loss which the petitioners sustained in 1937 upon investments in shares of stock of Empire Electric Machinery Co. which became worthless in that year. The petitioners claim the right to deduct the full amount of their investments in the stock. The respondent has allowed the deduction of those amounts less certain distributions which he alleges were capital distributions made upon the shares of stock prior to the taxable year. Findings of Fact George W. Potter and George N. Spiva are residents of Joplin, Missouri. Spiva Investments, Inc., is a corporation having its principal place of business *391 in Joplin. All of the petitioners filed their income tax returns for the calendar year 1937 with the collector of internal revenue for the sixth district of Missouri. In 1926 Potter acquired 100 shares of the original issue of the capital stock of Empire Electric Machinery Co. at a cash outlay of $10,000. On or about February 11, 1929, Spiva acquired by purchase 100 shares of the capital stock of the same company at a cost of $6,666.67. Spiva Investments, Inc. is a Delaware corporation which was organized on January 12, 1931, by George N. Spiva. The capital stock of the corporation had no par value and the entire amount was issued at organization to George N. Spiva in exchange for sundry securities and properties. Among the properties thus acquired were 300 shares of the original issue of the capital stock of Empire Electric Machinery Co. for which Spiva had paid $30,000. Empire Electric Machinery Co. was a corporation which was organized under the laws of the State of Missouri early in January, 1926. Prior to that date Rex Camblin owned and operated as a sole proprietorship a business known as Empire Electric Machinery Co. at Joplin, Missouri. The business consisted of furnishing *392 electric motors to various mining enterprises in what is known as the Tri-State lead and zinc mining district of northeast Oklahoma, southeast Kansas and southwest Missouri. The general nature of the business was to buy, sell, rent, deal in and service electrical machinery and equipment of various kinds. It had been very profitable prior to 1926. In 1925 Rex Camblin decided to incorporate his business and interested several individuals, including George W. Potter and George N. Spiva in taking stock in the corporation. The corporation issued 1,500 shares of its authorized capital stock to sundry individuals including Potter and Spiva for $150,000 cash. The corporation then immediately acquired the business previously operated by Rex Camblin by paying him $150,000 cash and issuing $50,000 par value of its capital stock. Of the $50,000 par value of stock so issued $45,000 was issued to Camblin and $5,000 to Carl Meyers, who had been a practicing public accountant in Joplin. At or immediately prior to the incorporation of the Empire Electric Machinery Co. in January, 1926, a complete inventory and appraisal was made of the stock, machinery, equipment, supplies and all other property *393 belonging to Rex Camblin which was used in connection with the business. The inventory and appraisal disclosed that the actual market value of the physical property sold and transferred by Camblin to the corporation (exclusive of any going concern or good will value) was greatly in excess of $200,000, namely, approximately $274,000. The books of the corporation of Empire Electric Machinery Co. were opened as of about January 1, 1926, with the following book values: Assets
Cash
$ 33,738.54
Accounts receivable
57,848.22
Inventory of supplies
52,160.71
Inventory of motors, equipment, etc.
156,252.53
$300,000.00
Liabilities
Capital stock
$200,000.00
Surplus
100,000.00
$300,000.00
In June, 1927, the Empire Electric Machinery Co. increased its capital stock from $200,000 to $300,000 by issuing a stock dividend from surplus. The $100,000 par value of new capital stock was issued pro rata to the stockholders. The Empire Electric Machinery Co. made pro rata cash distributions to its stockholders during its existence as follows: July,
1926
10% on
$200,000
$ 20,000
January,
1927
10% on
200,000
20,000
December,
1927
10% on
300,000
30,000
December,
1928
10% on
300,000
30,000
July,
1929
5% on
300,000
15,000
December,
1929
5% on
300,000
15,000
July,
1930
5% on
300,000
15,000
December,
1930
5% on
300,000
15,000
Total cash distributions paid to
stockholders
$160,000
*394 The Commissioner and petitioners have been unable to locate the books of account of Empire Electric Machinery Co.
The total cash distributions by Empire Electric Machinery Co. to its stockholders to the end of 1930 amounted to $160,000. Of these distributions $52,432.06 was from earnings and $107,567.94 was from capital. The shares of stock of Empire Electric Machinery Co. became absolutely worthless in 1937. In his income tax return for 1937 Potter deducted from gross income $10,000 representing his claimed loss upon his investment of that amount of money in his shares of stock of the company. The respondent determined, however, that during the years 1927 to 1930, inclusive, Potter had received in capital distributions from the company the amount of $5,378.39 and that his actual loss was in the amount of $4,621.61 rather than $10,000 as claimed in his return. In his income tax return for 1937 Spiva claimed the deduction from gross income of $6,666.67 representing his investments in the shares of stock of Empire Electric Machinery Co. Of this amount the respondent allowed a loss of $4,738.41 and disallowed the loss in the amount of $1,928.26 upon the premise that that amount *395 represented distributions received by Spiva from the corporation out of capital for the years 1929 and 1930. In its income tax return for 1937 Spiva Investments, Inc. took a deduction on account of the worthlessness of its holding of the stock of Empire Electric Machinery Co. in the amount of $30,000, which was the original cost of the stock to Spiva. The respondent allowed the deduction of $13,864.84 of the loss and disallowed the deduction of $16,135.16 upon the premise that that amount represented distributions received by George N. Spiva out of capital of the company in the years 1927 to 1930, inclusive, prior to transferring 300 shares of the stock to Spiva Investments, Inc. This transfer was in connection with the creation of the corporation and resulted in no gain or loss to Spiva. Opinion In these proceedings the petitioners claim that the respondent erred in his disallowance of a part of the claimed losses sustained by the petitioners as stockholders of the Empire Electric Machinery Co. upon the shares of that stock which admittedly became worthless in 1937. In the determination of the deficiencies the respondent has reduced the claimed losses by the distributions made *396 by the corporation to the petitioners during the years 1927 to 1930 over the earnings available for making such distributions. The adjustments made by the respondent were pursuant to section 115 (d) of the Revenue Act of 1936 which provides as follows: (d) Other Distributions from Capital. - If any distribution (not in partial or complete liquidation) made by a corporation to its shareholders is not out of increase in value of property accrued before March 1, 1913, and is not a dividend, then the amount of such distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113, and if in excess of such basis, such excess shall be taxable in the same manner as a gain from the sale or exchange of property. The respondent's determinations are based upon the income tax returns of Empire Electric Machinery Co. over a period of years which are admittedly the only evidence which could be offered by either the petitioners or the respondent. The data relied upon by the respondent is all shown in the income tax returns, photostat copies of which were received in evidence. The petitioners George W. Potter and Spiva Investments, Inc. also allege errors *397 on the part of the respondent in the determination of the deficiencies as follows: 4 (b) If the capital stock of Empire Electric Machinery Company had a market value, at the date of original issue, in excess of the par value, then Commissioner erred in not using such higher market value instead of the par value as the basis (unadjusted) for determining gain or loss of petitioner with respect to capital stock of Empire Electric Machinery Company issued to * * * The basis for this allegation of error appears to be the stipulation of the parties in each proceeding reading as follows: At or immediately prior to the incorporation of the Empire Electric Machinery Company in January 1926 a complete inventory and appraisal was made of the stock, machinery, equipment, supplies and all other property belonging to said Rex Camblin which was used in connection with said business. The said inventory and appraisal disclosed that the actual market value of said physical property sold and transferred by said Rex Camblin to the corporation (exclusive of any going concern or good will value) was greatly in excess of $200,000.00, namely, approximately $274,000.00. The fair market value of the stock *398 of the company at the date of organization is immaterial. These petitioners purchased the stock at par, except in the case of George N. Spiva, who purchased 100 shares after Empire Electric Machinery Co. had declared a stock dividend of 50% for such shares. For such shares he paid the par value reduced by the stock dividend. It is furthermore to be noted that the appraisal of the assets of a corporation is no clear indication of the fair market value of its shares of stock; for in many cases an appraisal of the assets of a corporation by reputable appraisers shows a value for the assets of the corporation greatly in excess of the par value or the fair market value of the shares. In other words, the fair market value of the assets separately considered may bear little relation to the fair market value of the shares. The Court discovers no errors in the respondent's determinations. Decisions will be entered for the respondent.